UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| APEX BENEFITS GROUP, INC., | ) | |
| Plaintiff, | ) ) ) | |
| vs. | ) | CIVIL ACTION No.: 1:18-cv-152 |
| ERIC DREYFUS | ) ) ) | |
| Defendant. | ) ) | |

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

Apex Benefits Group, Inc. ("Apex"), for its Complaint for Damages and Injunctive Relief against Eric Dreyfus ("Dreyfus"), states:

**NATURE OF THE CASE**

1. After plotting to join a competitor and secretly harvesting Apex trade secrets, and Dreyfus abruptly resigned his employment with Apex on December 29, 2017 to work for a competitor of Apex, Assured Partners of Indiana, Inc. ("Assured Partners"). Dreyfus misappropriated, and continues to misappropriate, Apex' trade secrets. In addition, Dreyfus breached fiduciary duties to Apex, violated federal and state computer tampering laws, breached and is breaching restrictive covenants, and has defamed Apex.

**PARTIES**

2. Apex is a corporation incorporated under the laws of Indiana and whose principal place of business is in Indianapolis.

3. Dreyfus is a citizen of Indiana.

## JURISDICTION AND VENUE

4. Subject-matter jurisdiction exists as federal question jurisdiction is present pursuant to 28 U.S.C. § 1331, as this action arises in part under both the federal Defend Trade Secrets Act, 18 U.S.C. § 1836 *et seq.*, and the federal Computer Fraud and Abuse Act, 18 U.S.C. § 1030; supplemental jurisdiction exists over the State-law claims pursuant to 28 U.S.C. § 1367 because all supplemental state law claims arise out of the same case or controversy as the federal claims over which this Court has original jurisdiction.

5. This Court has personal jurisdiction over Dreyfus because Dreyfus is a resident of this State and District, and because this action arises from Dreyfus' knowing and intentional breach of obligations owed to Apex while acting within and causing injury within this State and District.

6. Pursuant to 28 U.S.C. § 1391, venue is proper in this District because Dreyfus resides in this District and because a substantial part of the events giving rise to this action occurred in this District.

## FACTS COMMON TO ALL COUNTS

7. Paragraphs 1-6 are incorporated by reference.

8. Apex is a leading provider of strategic employee benefits consulting and brokerage services to employers. Apex is located in Indianapolis, Indiana, and conducts substantial business in the state of Indiana.

9. Assured Partners is a direct competitor of Apex in the provision of employee benefits consulting and brokerage services, and also conducts substantial business in Indiana.

10. In January 2014, Apex hired Dreyfus as Senior Benefits Advisor. In that position, Dreyfus was responsible for promoting and selling Apex' products and services to new and existing clients. Dreyfus was in that position until his departure on December 29, 2017.

11. Apex assigned several client accounts to Dreyfus totaling more than $1.5 million in business annually.

12. Dreyfus was highly compensated by Apex.

13. Dreyfus is bound by trade secret laws, restrictive covenants, and legal obligations that survive the termination of his employment with Apex.

14. Dreyfus had significant performance problems, and had been counselled on these problems. On December 14, 2017, Dreyfus received a final written warning from Apex due to his ongoing performance issues, including violation of Apex policies, misrepresentation, and insubordination.

15. On December 13 and 14, 2017, Dreyfus secretly connected three separate flash drives to his Apex computer and downloaded massive amounts of Apex confidential and protected trade secret information (the "Confidential Information"). The Confidential Information copied by Dreyfus constitutes proprietary, non-public information of Apex that has significant value. There was no legitimate business reason for Dreyfus to copy this data onto the flash drives.

16. Despite requests to return them, Dreyfus has not returned all of the aforementioned flash drives onto which Apex' trade secret information was copied, nor accounted for any potential subsequent duplication or transmittal of such information as requested.

17. By letter dated December 14, 2017, Dreyfus received from Assured Partners' Managing Director, Judd Feldman, a formal written offer of employment in the position of Vice President/Senior Client Advisor. This was unknown to Apex at the time and not discovered until recently post-separation; Dreyfus was upon information and belief engaged in employment discussions with Assured Partners prior to December 13 and 14 when he downloaded confidential, trade secret information to flashdrives.

18. Dreyfus subsequently accepted Assured Partners' offer of employment, and while still employed by Apex and before notifying Apex of his impending departure, impermissibly solicited other Apex employees to leave Apex to work for Assured Partners.

19. Subject to reasonable opportunity for investigation and discovery, Dreyfus impermissibly solicited several Apex clients prior to his departure and prior to notifying Apex thereof, to switch their business to Assured Partners.

20. Dreyfus abruptly resigned from Apex on December 29, 2017, without having provided any advance notice of his departure to Apex. Prior to resigning that day, Dreyfus accessed substantial confidential electronic data of Apex, on an almost daily basis from the date of the Assured Partners offer letter of December 14 through and including the date of his resignation and departure, December 29, a day on which he accessed multiple confidential items through his Apex laptop connected to the Apex system.

21. Since his resignation from Apex, Dreyfus has solicited and continues to contact, call, communicate electronically with, and solicit Apex employees and clients in order to benefit both himself and Assured Partners.

22. Also since his resignation from Apex, Dreyfus has communicated disparaging falsehoods in an effort to induce a loss of faith in Apex and diversion of business to him at Assured Partners.

23. Prior to filing this lawsuit, Apex made written demands upon Dreyfus and Assured Partners for him to cease-and-desist his illegal conduct, for return of all Apex property and data, for an accounting of all contacts with Apex employees and customers, and for an inventory of and inspection of all electronic devices. Dreyfus has failed to respond to these requests or otherwise honor his legal obligations to Apex.

24. Apex has been irreparably damaged and continues to be irreparably damaged by Dreyfus' illegal conduct.

25. Apex has invested significant fees and costs to investigate and seek to stop Dreyfus' illegal conduct.

## SPECIFIC COUNTS

### Count I – Defend Trade Secrets Act, 18 U.S.C. § 1836 *et seq.*

26. Apex repeats and realleges each and every allegation set forth in the paragraphs above as if fully set forth herein.

27. Apex developed and maintained substantial trade secrets.

28. Under DTSA, Dreyfus has a duty not to misappropriate information he knows or has reason to know is trade secret information.

29. Dreyfus knew or had reason to know that the Confidential Information was trade secret information.

30. Dreyfus misappropriated Apex trade secrets by copying the Confidential Information with no legitimate business purpose during his employment with Apex, and by continuing to possess Confidential Information after his employment with Apex terminated.

31. Dreyfus' conduct was willful.

32. Apex has been damaged by Dreyfus' misappropriation of trade secrets.

**Count II – Computer Fraud and Abuse Act, 18 U.S.C. § 1030.**

33. Apex repeats and realleges each and every allegation set forth in the paragraphs above as if fully set forth herein.

34. Apex' internal network and related company-owned electronic devices, accounts, and databases are "protected computers" under the Computer Fraud and Abuse Act.

35. Dreyfus knowingly and intentionally accessed Apex' internal network and company-owned computer without authorization and/or in excess of his authorized access, with an intent to defraud Apex and with an intent to misappropriate its confidential, proprietary, and trade secret information for use in competition against Apex following resignation of his employment.

36. As a direct and proximate result of Dreyfus' unauthorized access to its internal network and company-owned computer, and subsequent misappropriation of its confidential, proprietary and trade secret information, Apex has suffered and will continue to suffer losses in excess of $5,000 during the applicable one-year period.

**Count III – Indiana Uniform Trade Secrets Act, Ind. Code Ann. § 24-2-3-1** *et seq.*

37. Apex repeats and realleges each and every allegation set forth in the paragraphs above as if fully set forth herein.

6

38. Apex developed and maintained substantial trade secrets.

39. Under IUTSA, Dreyfus has a duty not to misappropriate information he knows or has reason to know is trade secret information.

40. Dreyfus misappropriated Apex trade secrets by copying the Confidential Information with no legitimate business purpose during his employment with Apex, and by continuing to possess the Confidential Information after his employment with Apex terminated.

41. Dreyfus' conduct was willful.

42. Apex has been damaged by Dreyfus' misappropriation of trade secrets.

**Count IV – Indiana Computer Trespass Law, Ind. Code Ann. § 34-43-2-3.**

43. Apex repeats and realleges each and every allegation set forth in the paragraphs above as if fully set forth herein.

44. Apex' internal network and company-owned computers constitute "computer systems" and "computer networks under the Indiana Computer Trespass law.

45. Dreyfus knowingly and intentionally accessed Apex' internal network and company-owned computer without the consent of Apex when he accessed and misappropriated its confidential, proprietary, and trade secret information from Apex' internal network and/or Apex' company-owned computer.

46. Apex has been damaged by Dreyfus' violation of the Indiana Computer Trespass law and subsequent misappropriation of its trade secret information thereby.

47. Dreyfus' violation of the Indiana Computer Trespass law falls within Indiana's Victim's Recovery Act, Ind. Code Ann. § 34-24-3-1, entitling Apex to treble damages and attorney's fees.

**Count V – Conversion.**

48. Apex repeats and realleges each and every allegation set forth in the paragraphs above as if fully set forth herein.

49. Dreyfus converted Apex property while employed by downloading the Confidential Information with no legitimate business purpose during his employment with Apex, and by continuing to possess the Confidential Information after his employment with Apex terminated.

50. Dreyfus has failed despite requests to return all Apex property.

51. Apex has been damaged by Dreyfus' conversion of Apex property.

52. Dreyfus' conversion of Apex property falls within Indiana's Victim's Recovery Act, Ind. Code Ann. § 34-24-3-1, entitling Apex to treble damages and attorney's fees.

**Count VI – Breach of Covenants (Non-Solicitation).**

53. Apex repeats and realleges each and every allegation set forth in the paragraphs above as if fully set forth herein.

54. Dreyfus is bound by post-employment restrictive covenants with Apex.

55. Dreyfus has solicited, and continues to solicit, both Apex employees and Apex clients and prospective clients in violation of that agreement.

56. Apex has been damages as a result of Dreyfus' breaches.

**Count VII – Breach of Fiduciary Duty and Duty of Loyalty.**

57. Apex repeats and realleges each and every allegation set forth in the paragraphs above as if fully set forth herein.

58. While Dreyfus was employed by Apex, Dreyfus owed Apex a fiduciary duty and duty of loyalty to refrain from acting in any manner inconsistent with its business interests.

59. Dreyfus breached his common law duty of loyalty and fiduciary duty arising from his employment relationship with Apex by intentionally accessing, downloading, storing, and/or retaining the Confidential Information, in violation of his obligations to Apex, for the express and wrongful purpose of preserving all such information in order to compete against Apex following the resignation of his employment.

60. While employed by Apex, subject to a reasonable opportunity for investigation and discovery, Dreyfus breached his common law duty of loyalty and fiduciary duty by soliciting one or more clients and/or employees of Apex for his benefit and the benefit of Assured Partners

61. Apex has been damaged by Dreyfus' breach of his fiduciary duty and duty of loyalty.

**Count VIII – Tortious Interference With Business Relationships.**

62. Apex repeats and realleges each and every allegation set forth in the paragraphs above as if fully set forth herein.

63. Apex and its clients have business relationships.

64. Dreyfus knew or should have known about the business relationships between Apex and its clients.

65. Dreyfus improperly used trade secret information for the purpose of interfering with the business relationships between Apex and its clients.

66. Dreyfus' interference was not justified.

67. Dreyfus' interference caused harm to the business relationships between Apex and its customers.

**Count IX – Defamation.**

68. Apex repeats and realleges each and every allegation set forth in the paragraphs above as if fully set forth herein.

69. Since his resignation, Dreyfus has maliciously communicated falsehoods about Apex for the purpose of diverting business away from Apex and to do business with him at Associated Partners instead.

70. As a direct and proximate result of Dreyfus' defamatory actions, Apex has suffered damages.

**Count X – Unjust Enrichment.**

71. Apex repeats and realleges each and every allegation set forth in the paragraphs above as if fully set forth herein.

72. During his employment with Apex, Dreyfus misappropriated confidential trade secret information regarding client information, including their preferences, as well as information about prospective clients.

73. Dreyfus used that confidential trade secret information in a way not contemplated by Apex when he misappropriated it in order to use it for his own benefit when he resigned his employment with Apex.

74. Dreyfus has failed to compensate Apex for the use of that confidential trade secret information.

75. As a result, a benefit has been conferred on Dreyfus by Apex for which Apex has not been compensated.

76. Under the circumstances, it would be unjust to allow Dreyfus to retain these benefits without compensation to Apex, and Apex is entitled to amount sufficient to compensate it for the benefit conferred upon Dreyfus.

WHEREFORE, Apex Benefits Group, Inc. prays for judgment against Defendant Eric Dreyfus with the following particular relief:

(1) That the Court issue an Order granting a Preliminary Injunction and Permanent Injunction;

(2) That Apex be awarded actual, compensatory, consequential, liquidated, treble, and special damages in an amount to be determined at trial;

(3) That Apex be awarded punitive damages;

(4) That Apex be awarded attorneys' fees and costs associated with bringing and prosecuting this action;

(5) That Apex be awarded prejudgment interest;

(6) That Apex be awarded such other and further relief as this Court deems just and proper.

Respectfully submitted,

APEX BENEFITS GROUP, INC.

By its Attorneys,

__*s/John R. Maley*_____
John R. Maley (14300-89)
Anthony K. Glenn (31318-53)
BARNES & THORNBURG LLP
11 South Meridian Street
Indianapolis, Indiana 46204
Telephone: (317) 236-1313
Facsimile: (317) 231-7433
Email: jmaley@btlaw.com
Email: aglenn@btlaw.com

*Attorneys for Apex Benefits Group, Inc.*

## CERTIFICATE OF SERVICE

A copy of this complaint was served by FedEx overnight delivery upon Defendant at 12703 Federal Place, Fishers, IN 46037 and 10401 N. Meridian Street, Suite 300, Indianapolis, IN 46290, this 18th day of January, 2018.

*s/ John R. Maley*